IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 7:20-cr-00043 |
| v. | ) |
| | ) By: Elizabeth K. Dillon |
| ROBERT DEWAYNE NOEL, JR. | ) United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Defendant Robert Dewayne Noel, Jr., proceeding pro se, filed a motion for compassionate release due, in part, to COVID-19. (Dkt. No. 136.) The Federal Public Defender was appointed to represent Noel but did not file anything on his behalf. (Dkt. No. 143.) Noel also filed a pro se motion for leave to file an addendum to his motion, which included the addendum. (Dkt. No. 142.) The United States has responded and opposes Noel's motion. (Dkt. No. 146.)

The court will grant Noel's motion for leave to file an addendum. The court finds that a hearing is not necessary to resolve Noel's motion for compassionate release, which will be denied for the reasons stated below.

I. BACKGROUND

Noel was indicted in 2020, and in 2021 pled guilty to one count of distribution of fifty grams or more of methamphetamine. The court sentenced Noel to a term of sixty months in prison. (Dkt. No. 124.) He is currently incarcerated at Petersburg Medium FCI with a projected release date of March 12, 2025.[1] Noel is thirty years old.

At sentencing, Noel was held responsible for 167.8 grams of methamphetamine. Noel was not involved in a lengthy conspiracy, but there were three controlled buys, and the conduct occurred eighteen days after he was released from incarceration for an earlier conviction.

---

[1] https://www.bop.gov/inmateloc/ (last visited Jan. 4, 2024).

Noel's criminal history is significant, dating back to age fifteen. It includes convictions for grand larceny, destruction of property, assault and battery, and possession of a firearm as a convicted felon. (*See* Revised Final Presentence Investigation Report (PSR) ¶¶ 30–45, Dkt. No. 122.) Noel committed the instant offense while under state supervision for possession of ammunition as a convicted felon.

Noel has been diagnosed with high blood pressure, which is treated with medication. Noel also has asthma and is obese. He has a history of substance abuse, including marijuana, MDMA, Xanax, and Percocet. Noel's medical records state that he has twice refused the COVID-19 vaccine, (Dkt. No. 147 (sealed medical record)), although he alleges in his addendum that the record is false, apparently contending that he has not been offered the COVID-19 vaccination. (Dkt. No. 142, at 2.)

In his original motion, Noel requests compassionate release primarily due to the risk of contracting COVID-19.[2] Noel also discusses facts relevant to the 18 U.S.C. § 3553(a) factors. For example, he cites his severely disadvantaged upbringing, that he suffers from addiction, and that he has an IQ of 60. He contends that his "diminished capacity establishes the need for community, residential programs," rather than incarceration and that the § 3553(a) factors have been served by the sentence he already has served. (*See generally* Mot., Dkt. No. 136.) Noel's addendum echoes some of the same points and provides copies of some medical records from 2022. (Dkt. No. 142.)

Notably, Petersburg FCI (reported as a combination of the Medium-Security and Low-Security facilities), reports no current cases of COVID-19 among inmates, and approximately

---

[2] The court addressed similar arguments from Noel at his December 2021 sentencing. Indeed, in its statement of reasons for imposing the sentence, the court declined Noel's invitation to reduce his sentence further on the basis that he might be vulnerable to COVID. In doing so, the court noted the availability of vaccines. (SOR, Dkt. No. 125.)

1743 of the 2360 inmates are considered "fully inoculated,"[3] as are many of the staff.[4]

## II. ANALYSIS

**A. Compassionate Release Under the First Step Act**

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence under certain circumstances. As amended by the First Step Act and in pertinent part,[5] the statute provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i). If a court finds extraordinary and compelling reasons for release, it must then consider the 18 U.S.C. § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's sentence. *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

In addition to satisfying the above, the reduction must be "consistent with [the] applicable policy statement[] issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). At the

---

[3] https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Dec. 21, 2023).

[4] https://www.bop.gov/coronavirus/covid19_statistics.html (last visited Dec. 21, 2023).

[5] Prior to the First Step Act of 2018, only the Bureau of Prison could seek relief in court under the statute. The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

time Noel filed his motions, the Commission had not yet issued "a policy statement that applies to motions filed by defendants under the recently amended § 3582(c)(1)(A)." *United States v. Burnell*, 837 F. App'x 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th Cir. 2020)). Courts could nonetheless look to the commentary in U.S. Sentencing Guidelines (U.S.S.G. or guidelines) § 1B1.13 for guidance. *McCoy*, 981 F.3d at 282 n.7. On November 1, 2023, amendments to the guidelines effectively moved a modified version of that commentary into the guideline itself.[6]

Based on the requirements of § 3582(c)(1)(A), Noel's motion requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

As the movant, "[a] defendant seeking compassionate release has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020); *see also United States v. Hargrove,* 30 F.4th 189, 195 (4th Cir. 2022) (noting the information provided by the inmate "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release"); *United States v. Brewington*, No. 2:12CR00009-007, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019); *United States v. Weaver*, No. 1:17-CR-235, 2020 WL 4810123, at *2 (E.D. Va. Aug. 18, 2020) (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56–57 (2005) (defendant bears burden as party seeking relief absent statutory guidance to the contrary)). Additionally, compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo.

---

[6] In this case, the result is the same regardless of whether the court relies only on the guideline commentary in effect at the time Noel he filed his motions or uses the current amended guideline. The court analyzes his motions under the new guideline.

2019).

**B. Exhaustion**

The court begins by considering exhaustion, the threshold requirement for obtaining relief under § 3582(c)(1)(A). *United States v. Muhammad*, 16 F. 4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and *either* fully exhausts all administrative rights to appeal the Bureau's decision *or* waits 30 days from the date of their initial request to file a motion in the district court." *Id.* at 131. Noel's motion contains his request to the warden for compassionate release, which was denied. (Dkt. No. 136-1.) And the United States does not dispute that "Noel has made a request to the Warden for release, and that this request has been denied." (Opp'n 1 n.1, Dkt. No. 144.) Because the United States does not assert an exhaustion defense, the court concludes that any lack of exhaustion does not bar relief.

**C. Extraordinary and Compelling Reasons**

The court must next consider whether Noel has shown "extraordinary and compelling" circumstances so as to render him eligible for a sentence reduction. As noted, Noel alleges that he suffers from asthma, hypertension, and morbid obesity. The limited medical records he has provided show that Noel's asthma and hypertension are being treated and appear to be under medical control. Additionally, the United States questions whether he is morbidly obese, but it acknowledges that he is at least obese and that both obesity and hypertension are recognized risk factors for COVID.[7]

---

[7] The court does not construe Noel's motion as seeking compassionate release solely on the grounds of his medical conditions, but only on the grounds that those conditions, combined with COVID-19, create a compelling and extraordinary reason for release. In any event, Noel would not qualify for a reduced sentence under the new guideline for a reduction based solely on medical reasons, U.S.S.G. 1B1.13(A)–(C). That guideline requires that defendant (1) have a terminal illness, defined as a "serious and advanced illness with an end-of-life trajectory"; (2) is suffering from a serious physical or medical condition, functional or cognitive impairment, or deteriorating health

The United States Sentencing Commission recently amended the section of the guidelines that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. *See* U.S.S.G. §1B1.13.

The revised sentencing guideline addresses when a defendant can demonstrate an extraordinary and compelling reason for a sentence reduction based on an outbreak of an infectious disease. Specifically, a defendant must show the following:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).

The fact that COVID-19 exists and that there is a possibility that someone may contract it in a prison is insufficient, in and of itself, to grant a motion for compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Rather, in the context of COVID-19,

> the threshold questions are whether [the inmate] has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See High*, 997 F.3d at 185 (explaining that arguments for compassionate release "based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19").

---

because of aging, which condition "substantially diminishes the ability of the defendant to provide self-care within" a prison and "from which he or she is not expected to recover"; or (3) is suffering from a medical condition that requires specialized care "that is not being provided and without which [he] is at risk of serious deterioration in health or death." *Id.* Noel's allegations do not satisfy any of these three circumstances.

*United States v. Youngblood*, 858 F. App'x 96, 98 (4th Cir. 2021).

Noel cannot make the showing required by the guideline because he cannot show either that FCI Petersburg is affected by an outbreak of an infectious disease, or an ongoing public health emergency is currently in effect as declared by a federal, state, or local authority. As noted, his facility currently has zero open cases of COVID-19 out of more than 2360 inmates. The facility is operating at Operational Level 1, indicating that the medical isolation rate at the facility is less than two percent and that there are fewer than 100 cases per 100,000 over the last seven days.[8] In addition, on May 11, 2023, the United States Department of Health and Human Services announced the end of the public health emergency caused by the COVID-19 pandemic.[9] Thus, Noel has not shown an ongoing public health emergency, as required by subsection (i).

Moreover, even if Noel could satisfy the first two conditions in subsections (i) and (ii) of the guideline, he cannot show that any increased risk to him cannot be adequately mitigated in a timely manner, given the availability of vaccines against COVID-19.

As noted, the United States has provided Noel's immunization record, showing he twice refused a COVID-19 vaccine, on March 31 and April 12, 2022. (Dkt. No. 147.) Noel counters that the record is "false," but the court finds nothing to support that assertion. First of all, Noel offers no explanation as to why anyone would have falsified his immunization record. Further, for support of his contention that he has not been offered the vaccine, he points only to one exhibit with notes about a medical visit related to treating his hypertension. (Dkt. No. 142-1.) But that record does not expressly contradict the immunization record, it simply contains no reference to COVID-19 at all. Moreover, it is extremely unlikely, given the large numbers of

---

[8] https://www.bop.gov/coronavirus/covid19_statistics.html (last viewed Jan. 4, 2024).

[9] https://www.hhs.gov/about/news/2023/05/11/hhs-secretary-xavier-becerra-statement-on-end-of-the-covid-19-public-health-emergency.html (last viewed Jan. 4, 2024).

inmates who have received the vaccine (almost 75% of the population at Petersburg), that Noel has not been offered the vaccine in his time there. Even if he were not offered one, Noel offers no explanation for why he has not sought actively sought to be vaccinated if, as he argues, a vaccine has not been offered to him. Lastly, Noel has not disclosed any religious or medical reason why he cannot receive a COVID-19 vaccine.

Notably, the availability of the vaccine so that inmates can mitigate the risk of contracting COVID-19 has led numerous courts to conclude that a vaccinated prisoner typically cannot show extraordinary and compelling reasons. *See, e.g.*, *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); *United States v. Luna*, No. 7:16-CR-11-D-1, 2021 WL 5828034, at *3 (E.D.N.C. Dec. 7, 2021) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19).

This is true even where a defendant has conditions that put him at increased risk of severe disease if he contracts COVID-19. *United States v. Murphy*, Case No. 4:03-cr-70134, 2021 WL 3084922, at *2 (W.D. Va. July 21, 2021) ("Because Murphy is now fully vaccinated, the Court finds that any increased risks posed by COVID-19 due to his underlying medical conditions do not constitute extraordinary and compelling circumstances."). *See e.g., United States v. Peterson*, 2021 WL 2156398, at *2 (E.D. Pa. May 27, 2021) (the defendant "suffers from hypertension, asthma, and prediabetes and he is obese and a former smoker," but "[g]iven the

8

significant protection the . . . vaccine offers and the declining rates of COVID-19 infections in prisons, we (like many other courts) do not find that Mr. Peterson has presented extraordinary and compelling circumstances at this time.").

Further, where—as here—an inmate has *refused* to be vaccinated, that cuts against any finding of extraordinary and compelling circumstances. As the Seventh Circuit explained, "a prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." *Broadfield*, 5 F.4th at 803; *see also United States v. Thomas*, Nos. 21-1645, 21-2105, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) ("District courts routinely deny compassionate release to inmates who refuse the COVID-19 vaccine because they have voluntarily failed to mitigate the very health concerns they identify in support of an early release."). The court agrees with this authority and finds that Noel cannot meet the extraordinary and compelling circumstances standard for compassionate release.

## D. Section 3553(a) Factors

Even if Noel could show an extraordinary and compelling reason for compassionate release, the sentencing factors do not warrant a sentence reduction. The relevant sentencing factors, found in 18 U.S.C. § 3553(a), include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to avoid unwarranted sentence disparities. The court considers these factors holistically, and no one factor is dispositive, *United States v. Kibble*, No. 20-7009, 2021 WL 1216543, at *4 (4th Cir. April 1, 2021), but the court should not release an inmate who poses a danger to another person or the community, U.S.S.G. § 1B1.13.

As discussed above, Noel has a long and significant criminal history, especially for

9

someone of his young age. His crime in this case, distributing large quantities of a dangerous narcotic, presented a danger to the community. Moreover, he committed this offense while on supervision from a previous crime and the conduct occurred only eighteen days after his release from incarceration, demonstrating that he was not deterred by previous punishments. The court varied downward at sentencing because of Noel's difficult upbringing, including time spent in foster care, and his diminished capacity, and the court was aware of both his intellectual and developmental challenges. (*See* PSR ¶¶ 66–69, 72.) But none of those factors has arisen since Noel was sentenced, and none justifies an additional reduction in sentence, much less to reduce Noel's sentence to time served. In sum, the need to protect the public from future crimes, promote respect for the law, and provide specific and general deterrence demand that Noel must serve far more of his sentence than he has so far served.

### III.  CONCLUSION

For the reasons stated above, it is hereby ORDERED that Noel's motion for leave to file an addendum to his motion for compassionate release (Dkt. No. 142) is GRANTED, but his motion for compassionate release (Dkt. No. 136) is DENIED. The clerk is directed to provide a copy of this order to Noel, all counsel of record, and the United States Probation Office.

Entered: January 5, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge